UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

---

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff | 4:23-cr-40022 |
| vs. | MEMORANDUM AND<br>ORDER DENYING<br>MOTION TO DISMISS |
| COLLIN PETER FRANZKY,<br>Defendant | |

---

Pending before the Court is Defendant's motion to dismiss the charge of possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(4). (Doc. 35). The Defendant argues the statute is unconstitutional both facially and as applied. (Doc. 36, PgID 83). The Government has responded, stating its position that the Second Amendment does not render the statute unconstitutional. (Doc. 38). For the following reasons, the Court denies Defendant's motion to dismiss.

**BACKGROUND**

Defendant has been charged with two counts of violating 18 U.S.C. § 922(g)(4), which prohibits the possession of a firearm by a person who has been committed to a mental institution. The indictment alleges that Defendant has

1

previously been committed to a mental institution, knew he had been so committed, and possessed firearms on July 22, 2022, and March 3, 2023. Based on documentation filed in Defendant's case, the Court held a hearing on October 23, 2023, to address whether a competency evaluation of Defendant should be conducted. (Doc. 47). The Court determined that sufficient evaluations of Defendant had been completed and ordered that he be hospitalized for treatment. (Doc. 56). The Court received a Certificate of competency and accompanying report dated September 20, 2024 from the Warden, Federal Medical Center, Devens, reporting that Defendant is presently competent to stand trial. (Doc. 71). The Court addressed Defendant's competency at a hearing on October 8, 2024, and recessed the hearing in anticipation of additional information being provided.

Pending resolution of the issue of competency, the Court deems it appropriate to address Defendant's motion to dismiss the case on the grounds that 18 U.S.C. § 922(g)(4) is unconstitutional facially and as applied to him.

**LEGAL STANDARD**

The Second Amendment provides as follows: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

In landmark decisions, the Supreme Court addressed the parameters of the Second Amendment in *District of Columbia v. Heller*, 554 U.S. 570 (2008)

(invalidating ban on handgun possession in the home), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010) (holding Second Amendment applies to States). Subsequently, the Court augmented its broad view of the Second Amendment in *New York State Rifle & Pistol Association, Inc. v. Bruen,* which held that the Second Amendment protects an individual's "right to carry a handgun for self-defense outside the home," and as a result, regulations on firearms must meet certain requirements. 597 U.S. 1 (2022). The Court ruled further that a gun regulation must do more than promote an "important interest," and instead must also be "consistent with this Nation's historical tradition of firearm regulation." *Id.* at 17.

To implement this approach *Bruen* stated that if the Second Amendment's "plain text" covers a person's conduct, the Constitution "presumptively protects it." *Id.* at 24. In that situation, the Government bears the burden of proving that, when analyzed in light of the country's historical tradition, any modern regulation imposes a "comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 29. In engaging in the required analysis there should be an assessment of whether a societal problem has persisted since the 18th Century and gone unregulated; if so, that is relevant evidence that the modern regulation is inconsistent with the Second Amendment. *Id.* at 26. Likewise, a modern regulation is inconsistent if an earlier generation's approach was materially

(invalidating ban on handgun possession in the home), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010) (holding Second Amendment applies to States). Subsequently, the Court augmented its broad view of the Second Amendment in *New York State Rifle & Pistol Association, Inc. v. Bruen,* which held that the Second Amendment protects an individual's "right to carry a handgun for self-defense outside the home," and as a result, regulations on firearms must meet certain requirements. 597 U.S. 1 (2022). The Court ruled further that a gun regulation must do more than promote an "important interest," and instead must also be "consistent with this Nation's historical tradition of firearm regulation." *Id.* at 17.

To implement this approach *Bruen* stated that if the Second Amendment's "plain text" covers a person's conduct, the Constitution "presumptively protects it." *Id.* at 24. In that situation, the Government bears the burden of proving that, when analyzed in light of the country's historical tradition, any modern regulation imposes a "comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 29. In engaging in the required analysis there should be an assessment of whether a societal problem has persisted since the 18th Century and gone unregulated; if so, that is relevant evidence that the modern regulation is inconsistent with the Second Amendment. *Id.* at 26. Likewise, a modern regulation is inconsistent if an earlier generation's approach was materially

different or a proposed approach akin to the modern regulation was rejected. *Id.* at 26-27.

On the other hand, "unprecedented societal concerns or dramatic technological changes" might demand "a more nuanced approach." *Id.* at 27. Reasoning by analogy to find relevant similarities will shape the analysis of whether a historical regulation is an appropriate analogue to a modern one. *Id.* at 28. As the Court added, although a modern regulation may not be "a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* at 30.

The Court augmented its Second Amendment jurisprudence in *United States v. Rahimi,* which upheld 18 U.S.C. § 922(g)(8) against a constitutional challenge. 602 U.S. ___, 144 S.Ct. 1889, 219 L.Ed.2d 351 (2024). This provision prohibits firearm possession by a person under a domestic violence restraining order if the person has been found to pose "a credible threat to the physical safety of [an] intimate partner," or a child of the partner or defendant. *Id.* § 922(g)(8). The Court repeated its prior statements that the Second Amendment does not convey unlimited rights to gun possession and courts must analyze challenges to firearms restrictions by examining the "historical tradition of firearm regulation." 144 S.Ct at 1897 (quoting *Bruen*, 597 U.S. at 17). The law is not "trapped in amber," *id.*, however, even though it must be "consistent with the principles that underpin our

regulatory tradition." *Id.* at 1898. The Court explained further that "if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." *Id.* The rule need not be a "dead ringer" or "historical twin." *Id.* (quoting *Bruen*, 597 U.S. at 30). Relying on the tradition of disarming those who pose "a clear threat of physical violence to another," *id.* at 1901, the Court also reinforced that prohibiting gun possession by "felons and the mentally ill" is "presumptively lawful." *Id.* at 1902 (quoting *Heller*, 554 U.S. at 626).

With these Supreme Court cases as guidance, the Court's review includes decisions from the Eighth Circuit and other courts interpreting the provisions of 18 U.S.C. § 922(g), as well as the submissions by the Parties. (Doc. 36, 38).

Prior to the holding in *Bruen*, the Eighth Circuit addressed the constitutionality of 18 U.S.C. § 922(g)(3), which prohibits possession of a firearm by a user or person addicted to drugs, in *United States v. Seay*, 620 F.3d 919 (8th Cir. 2010). The defendant raised a facial attack, which the court rejected in reliance on *Heller*. *Id.* at 925-26 (citing *Heller*, 554 U.S. at 626). The court quoted *Heller*'s admonition that its holding "did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons and the mentally ill." *Id.* at 924 (quoting *Heller*, 554 U.S. at 626). The court noted the

5

extensive authority that had upheld the constitutionality of the statute, referencing its "historical pedigree," albeit limited to the context of the Gun Control Act of 1968, and ruled that the statute did not violate the Second Amendment. *Id.* See also *United States v. Sitladeen*, 64 F.4th at 985-87 (8th Cir. 2023) (affirming the constitutionality of § 922(g)(5), prohibiting firearm possession by one not lawfully in the United States); *United States v. Okello*, 2023 WL 5515828, at *3-5 (D.S.D. Aug. 25, 2023) (historical analysis pertaining to § 922(g)(3)); *United States v. Lowry*, 2023 WL 3587309, at *5-6 (D.S.D. May 5, 2023) (pre-*Jackson* report and recommendation recounting historical basis for § 922(g)(1)).

Supplements to the historical pedigree discussed in *Seay* were well-summarized in the Parties' briefs, (Doc. 36, 38), which the Court has consulted along with the discussions of the history of the Second Amendment in *Heller*, *McDonald*, *Bruen*, and many other cases. The Court also has reviewed the Eighth Circuit's lengthy and detailed historical account post-*Rahimi* in *United States v. Jackson*, which analyzed whether the prohibition on a felon possessing a firearm under 18 U.S.C. § 922(g)(1) is constitutional. 110 F.4th 1120 (8th Cir. 2024) (on remand following *Rahimi*). The *Jackson* court acknowledged the Government's burden to prove that the regulation in question "is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 1126 (citing *Bruen*, 597 U.S. at 24). The court reviewed firearm prohibitions from the colonial era through the

Civil War and concluded that "legislatures historically prohibited possession by categories of persons based on a conclusion that the category as a whole presented an unacceptable risk of danger if armed." *Id.* at 1128. An individualized determination is not needed. *Id.* The court quoted *Heller's* reference to longstanding prohibitions on the possession of firearms by categories of people. *Id.* (citing *Heller*, 554 U.S. at 626, identifying the categories of felons and the mentally ill).

Important to this Court's analysis is the pre-*Rahimi* Eighth Circuit decision in *United States v. Veasley*, which addressed the constitutionality of 18 U.S.C. § 922(g)(3), prohibiting gun possession by those who use or are addicted to drugs. 98 F.4th 906 (8th Cir. 2024). First, the court clarified that an "as applied" challenge "requires a court to examine a statute based on a defendant's individual circumstances." *Id.* at 909 (citing *United States v. Lehman*, 8 F.4th 754, 757 (8th Cir. 2021)). A facial challenge, in contrast, "'is really just a claim that the law or policy is unconstitutional in all its applications,' regardless of the individual circumstances." *Id.* (quoting *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019)). As is evident, the inquiry with the former focuses on whether the application of the statute to the defendant is "consistent with this Nation's historical tradition of firearm regulation." *Id.* (quoting *Bruen,* 597 U.S. at 17). With the latter, the court must identify constitutional applications, even if they do not govern the

defendant's conduct, and use "the same text-and-historical-understanding framework" to assess the conduct. *Id.*

The *Veasley* court began its analysis of § 922(g)(3) by analogizing drugs to alcohol and the latter's treatment in colonial days and earlier. *Id.* at 910-11. The court then rejected a "pinhole" approach to "unprecedented social concerns," to assess whether a "well-established and representative historical analogue" exists that would render § 922(g)(3) constitutional in at least some of its concerns. The court found one: mental illness. Although mental illness and drug use "are not the same thing," they are similar in the sense that "their behavioral effects overlap." *Id.* at 912. The court canvassed the treatment of mental illness in the 18th century, including situations where mentally ill people were deemed to pose a danger to society. Most often, they were jailed, often under harsh conditions. *Id.* at 913 (citing Lynn Gamwell & Nancy Tomes, *Madness in America* 20 (1995)). Eventually, society developed mental hospitals to house and treat them. *Id.* at 913-915 (citing numerous contemporary sources including Blackstone, 1 William Blackstone, Commentaries *294; Anthony Highmore, *A Treatise on the Law of Idiocy and Lunacy* 104 (London, R. Wilks 1807); Benjamin Franklin, *Some Account of the Pennsylvania Hospital* 3 (I. Bernard Cohen ed., Johns Hopkins Press 1954)). As is evident, "confinement led to the loss of liberties," *id.* at 915, and by the 18th century, statutes in some jurisdictions prohibited giving guns to

mentally ill people. *Id.* at 915-16. As the court noted, the justification for actions to restrict the liberty of mentally ill people was to "keep guns out of the hands of presumptively risky people." *Id.* at 915 (quoting *United States v. Yancey*, 621 F.3d 681 (8th Cir. 2010)). The goal, at least in part, was to make sure "the mentally ill could not harm themselves or others." *Id.* at 916.

This traditional approach to gun possession by mentally ill people was recognized in *Heller, McDonald, Bruen,* and *Rahimi*. *Heller* stated that the right under the Second Amendment "is not unlimited," and that "the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." 554 U.S. 570, 626. In declining to "undertake an exhaustive historical analysis," of the Second Amendment, the Court made clear that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill…." *Id.* at 626-27. *McDonald* quoted these passages from *Heller* and reinforced that they remain in place: "We repeat those assurances here." 561 U.S. at 786. *Bruen's* concurrences did likewise. 597 U.S. at 71, 81 (Alito, J., concurring; Kavanaugh, J., and Roberts, C.J., concurring). *Rahimi* reinforced this holding. In upholding the gun prohibition in § 922(g)(8) as applied to those convicted of domestic abuse, the Court stated that *Heller* noted approval of many firearm prohibitions "like those on the possession of firearms by 'felons and the mentally ill.'" 602 U.S. \_\_\_, 144 S.Ct. 1889, 1902.

Those prohibitions are "presumptively lawful." *Id.* Although few courts have ruled on the constitutionality of § 922(g)(4) following the *Rahimi* decision, the Court takes note of *United States v. Walker*, rejecting the argument that § 922(g)(4) is unconstitutional under the Second Amendment. 2024 WL 4024204, *4 (D. Minn. Sept. 3, 2024).

## ANALYSIS

Defendant has made a facial challenge to § 922(g)(4). This argument presupposes that under no set of facts would it be constitutional for the United States to deprive an individual who had been committed to a mental institution the ability to possess a firearm. Such a position is untenable, given the potential for such a person to pose a danger to himself or to other persons because of a mental illness. The long history of the prohibition of firearms possession by those who have been determined to be mentally ill supports the constitutionality of such a provision. That history is elucidated most clearly at the Supreme Court level in cases such as *Heller, Bruen,* and *Rahimi*, and at the Eighth Circuit level by *Jackson* and *Veasley*. The history of statutes prohibiting gun possession by mentally ill people is "consistent with this Nation's historical tradition of firearm regulation." *Bruen,* 597 U.S. at 17. Section 922(g)(4) is designed to protect both society and the mentally ill individual and is consistent with the Nation's historical tradition when applied to a person who has previously been committed to a mental

institution. Therefore, the statute complies with the Second Amendment's requirements. Further, because § 922(g)(4) can have constitutional applications—as Defendant challenged by bringing a facial challenge to the statute--the motion to dismiss based on a facial challenge is denied.

Defendant has also challenged § 922(g)(4) as applied to him. The Government has alleged in the indictment that Defendant was committed to a mental institution in the past and subsequently possessed firearms on two occasions. As noted above, prohibiting such a person from possessing firearms is an aspect of the long history of gun regulation in this country and the statute can be applied in a constitutional manner. The Court has before it an extensive file with sufficient evidence to support that Defendant was properly committed to a mental institution in the past. Therefore, the Court denies Defendant's challenge under the Second Amendment to the application of § 922(g)(4) to him.

## CONCLUSION

18 U.S.C. § 922(g)(4) is constitutional on its face and as applied to Defendant. Therefore, Defendant's motion to dismiss is denied.

Dated this 15th day of October, 2024.

BY THE COURT:

*[signature]*

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

*[signature]*